{¶ 17} I respectfully dissent because I believe that the state failed to demonstrate either a reasonable basis for a pat down of defendant or probable cause to search defendant and seize the crack pipe.[1]
 {¶ 18} This court has previously explained that, under Terry v. Ohio,
"a police officer may make a brief, warrantless, investigatory stop of an individual without probable cause to arrest where the officer reasonably suspects that the individual is or has been involved in criminal activity. In assessing that conclusion, the officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." City ofCleveland v. Floyd Fields, Cuyahoga App. No. 82070, 2003 Ohio App. LEXIS 1869 Fields, at ¶ 18 (citations omitted).
High Drug Area
 {¶ 19} One fact the officer repeatedly emphasized was that the area was a high drug area. As this court in Floyd previously observed, however, a high drug area, even a "special attention" area,
 {¶ 20} "does nothing to create reasonable suspicion in a particular case. If this were so," this court has explained, "any individual found in an area so designated would be a criminal suspect subject to a Terry
stop. Even in high crime areas, a citizen is entitled to the presumption that he obeys the law. The investigatory stop in a high crime or `special attention' area still requires specific, articulable facts about the individual suspect * * *."
 {¶ 21} Id., at ¶ 25, citing State v. Clark, 139 Ohio App.3d 183;743 N.E.2d 451; 200 Ohio App. LEXIS 3814.
Burn Marks
 {¶ 22} Among his reasons for the pat down, the officer included the burn marks he observed on defendant's hands as "an indicator of somebody who's been smoking a hot crack pipe." Tr. 11. The trial judge also cited this observation as a basis for denying the motion to suppress. Although the officer spoke in the progressive form of the verb ("been smoking"), such burns, as defense counsel correctly observed, do not indicate current use. The officer did not indicate the burns were fresh. The burn marks, therefore, do not provide a basis for reasonably suspecting defendant had been engaging in criminal activity at that time and location.
Demeanor
 {¶ 23} Another reason the officer cited for his suspicions was that defendant's demeanor was "just a little bit nervous." In a very recent case, the Sixth Circuit has held that nervousness is an "unreliable indicator." U.S. v. Richardson (2004) 385 F.3d 625; 2004 U.S. App. LEXIS 20061, 630. The officer acknowledged, furthermore, that defendant did not say anything "threatening" to him or "make any kind of threatening gestures." Tr. 21. The officer further volunteered that defendant was not "belligerent in any form or anything like that." Tr. 13-14. Moreover, defendant complied with each request the officer made. Defendant's total demeanor, therefore, provided no reasonable basis to suspect criminal activity.
Illegal Acts
 {¶ 24} When asked whether he observed defendant do anything illegal, the officer noted that "there was beer around him" and "in the grassy area there was a can of beer." He further observed that co-defendant had Wild Irish Rose with her and "in that area a lot of people share all those things." Tr. 20. The officer did not specifically say, however, what he has just described was illegal.
The trial judge, on the other hand, expressly noted, as a circumstance for denying the motion to suppress, that defendant was with a woman drinking from an open container and "that he had a beer within his reach." The court added, however that "it wasn't clearly established whether that was his beer or it was just an old beer laying around." Tr. 30. That qualification was sufficient to disqualify this circumstance as any basis for reasonable suspicion of defendant engaging in criminal activity. Moreover, drinking from an open container is a minor misdemeanor (R.C. § 4301.62), not an arrestable offense (R.C. § 2935.26).
Loitering
 {¶ 25} When pressed, the officer offered hypothetically: "If you want to call loitering illegal, yes, then he was loitering in an area that he shouldn't have even been there." Tr. 20-21. The officer does not explain why defendant should not have been there except to say he was sitting in an area of an abandoned building and he did not recognize him as from the area. Tr. 8. Such evidence would not satisfy the simple offense of loitering, which is a minor misdemeanor.[2] Again, because loitering here could be only a minor misdemeanor, the officer would be justified in asking defendant his name and perhaps telling him to move on or perhaps citing him. But nothing more.
Crack Pipe
 {¶ 26} The officer also gave a reason that he saw a crack pipe. Tr. 11. This pipe, however, fell from the skirt of the person sitting next to defendant. Whereas this pipe could justify a brief inquiry to defendant, for example, asking his name, the pipe, even with the other circumstances the officer named, would not justify a pat down.
 {¶ 27} The trial court also listed the companion's crack pipe as a reason to deny the motion to suppress. Mere association and conversation with someone possessing a crack pipe, however, does not warrant a reasonable suspicion that defendant was engaged in any drug activity, especially since the companion was currently observed drinking Irish Rose, not smoking crack. Again, the officer's observation could justify a brief investigatory detention, but nothing more.
Identification
 {¶ 28} One reason Officer Blasini cited repeatedly for the pat down was that defendant "did not have an ID on him." Tr. 11. A bit later, the officer said "he didn't have proper ID on him." Tr. 14. In fact, the officer admitted under cross-examination that defendant presented a Cuyahoga County welfare card, which contained defendant's name and social security number. The officer did not find this identification acceptable because it was "not a state ID card" and therefore not "legal to us." Tr. 18.
 {¶ 29} The trial court concluded the totality of circumstances were sufficient for the police "to inquire of the defendant in this case, and they did, and he did not have a state ID in this case." Thus the trial judge apparently believed that the absence of a state ID justified an inquiry. The police officer, however, believed it a proper basis for a pat down.
 {¶ 30} The Second District has held that where a person stopped for a minor misdemeanor furnishes the police officer with his name and social security number, and that information is verified by computer, the person has offered satisfactory evidence of his identity. (Citations omitted.) Although we have not required the police to go to extraordinary lengths to verify identification information, * * * police officers cannot avail themselves of the exception to the citation only provision of R.C. 2935.26
[which says a law enforcement officer is not authorized to arrest for the commission of a minor misdemeanor except for specific exceptions] by refusing to attempt to verify identification information if the means for doing so are readily available.
 {¶ 31} State v. Terry, (Montgomery App. No. 15796), 1997 Ohio App. LEXIS 670.
 {¶ 32} In Terry, the court held that if a police cruiser with an operational computer had arrived in sufficient time for the officer to have attempted to verify defendant's information as to her identity, prior to observing cocaine in her mouth, the evidence should have been suppressed. Similarly, in the case at bar, the officer testified that after the pat down he later checked out the ID and found it valid. Nothing in the record indicates that the officer could not have made this check earlier. Thus the circumstances of an open container or loitering coupled with the lack of a "state ID" were not sufficient to proceed to a pat down.
No Probable Cause for Search and Seizure
 {¶ 33} There was no reason to suspect defendant was engaging in criminal activity. Even if, arguendo, all the circumstances had provided a reasonable suspicion of criminal activity, the police are permitted only an "investigatory detention" to question the person briefly and a "carefully limited search of the outer clothing in an attempt to discover weapons." Terry v. Ohio (1968), 392 U.S. 1; 88 S.Ct. 1868; 20 L.Ed.2d 889; U.S. LEXIS 1345; 44 Ohio Op.2d 383. The officer in the case at bar clearly stated the purpose of the pat down was to make sure that defendant did not have any weapons. He further explained that "in that area" they "get a lot of box cutters, small knives, also the crack pipes," which broken can be used as a weapon. Tr. 12-13. But he testified he found only "what felt like a little cylinder."[3] Tr. 13. Not having felt anything that he identified as a weapon, the officer had no basis to believe that his safety was in danger.[4] The officer provided no justification, therefore, for proceeding past the pat down and reaching into defendant's pocket.
 {¶ 34} Case law has clarified that to go beyond the pat down on the basis of feeling an object, the officer must say he felt an object whose form made its identity "immediately apparent." State v. Cloud (1993),91 Ohio App.3d 366; 632 N.E.2d 932, citing Minnesota v. Dickerson
(1993), U.S. 113 S.Ct. 2130, 124 L.Ed.2d 334, 508 U.S. 366. As the Second District Court has explained:
For purposes of analysis * * *, we will assume that an object coming within a police officer's plain feel during a proper pat-down frisk for weapons may be seized if the officer has probable cause to believe that the item is contraband before seizing it. In the case before us, Officer house testified that he could feel a small, hard object in the lower corner of Lander's coat pocket when he was patting it down for weapons. In order to reach a conclusion that this object was a piece of crack cocaine, the State necessarily relies upon Officer House's training and experience with respect to crack cocaine, which appears to have been extensive. Significantly, Officer House made no claim he had probable cause to believe that the object was crack cocaine. On each of the two occasions when he covered this point in his testimony, he used the word `suspected' to describe his conclusion, clearly indicating that his conclusion that the object might be crack cocaine was merely a suspicion, rather than probable cause to believe, that the object was crack cocaine."
 {¶ 35} State v. Groves, 156 Ohio App. 3d 205, 2004-Ohio-662, citingState v. Lander, Montgomery App. No. 17898, 2000 Ohio App. LEXIS 120. In the case at bar, as in Groves, the officer made no claim that he had probable cause to believe that the object was a weapon or crack pipe. So the state has failed to satisfy its burden of proof that the officer had probable cause to proceed past the pat down. This court has previously ruled on a set of facts quite similar to those in the case at bar. InState v. Lockett, 99 Ohio App.3d 81; 649 N.E.2d 1302, defendant was near two people drinking beer while he was walking from a store and carrying a bag. There was no evidence defendant was engaging in any suspicious activity. Nevertheless, the officers searched defendant and arrested him for possession and using cocaine. This court held that
"the inference that persons who talk to narcotics addicts are engaged in the criminal traffic in narcotics is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security."
 {¶ 36} Id., citing Sibron v. New York (1968), 392 U.S. 40; 88 S.Ct. 1889;20 L.Ed.2d 917, 62-63.
 {¶ 37} The totality of circumstances in the case at bar does not provide a reasonable suspicion for proceeding to a pat down, much less for going past the pat down to search defendant. The officer never testified that he felt an object whose form made its identity as a weapon or crack pipe "immediately apparent."
 {¶ 38} The officer never articulated probable cause, therefore, that defendant possessed a crack pipe or that he was an armed and dangerous person who could endanger himself or others. The motion to suppress, therefore, should have been granted.
[1] The majority twice says that the crack pipe that the officer found on defendant "contained crack residue." Ante pp. 2 and 3. At the suppression hearing no evidence whatsoever was presented identifying what the pipe contained.
[2] Nor would the facts here qualify as a violation of Cleveland Ordinance 607.19.
[3] The officer was not certain whether this particular crack pipe was plastic or glass.
[4] The majority opinion erroneously states three times that the officer who patted down defendant was "certain that the object was a crack pipe." Ante pp. 3, 7 and 8. He never said he knew it was a crack pipe. Nor did he say he suspected it to be a gun or a weapon of any kind. He only said what it felt like: "a little cylinder."