*759 BOGGS, Chief Judge,
dissenting.
The first question at issue in this case is whether a seizure, initially reasonable, can remain so when the officer has concluded the lawful business of the séizure and lies to the person that he is detaining as to his authority to continue the detention. I think the answer to that question is no. Second, when an officer is continuing to detain a citizen under false pretenses, does that render a subsequent consent to search during that detention, and the prolonged continuation of that search while the person is still being detained under false pretenses, an invalid consent, I think the answer to that question is yes. Finally, did the officer here even have “reasonable suspicion” to continue the detention?
As with many search cases, we must examine the scenario of events in discrete phases. I agree with the court that the initial stop for “following too closely” is valid, in light of the district judge’s factual findings. However, we begin to part company at the time when, as the district court found and our court agrees, the officer had concluded his legitimate business and deliberately chose to lie to the driver as to the basis for his continued detention. At this point, any continued detention could not be on account of the driver’s license check, and Officer Fisher never claimed that the detention was necessary to finish any additional business concerning the stop (for which no ticket was ever issued). Rather, the continued detention was solely pursuant to the arbitrary abuse of the officer’s power. It is simply plain common sense that any driver’s reaction (let alone this driver’s reaction) to a request for search might well be quite different in a circumstance in which he is told that he is free to go, or will be free as soon as any additional paperwork is done, or simply has his license returned and is let out of the police car, as opposed to the circumstance when the officer has told you that you will continue to be detained (indefinitely, for all that appears).[1] In fact, the detention under false pretenses continued for nearly an hour before the drugs were found. Officer Fisher testified that Walton was not free to go.
The court focuses on the fact that at the time the officer told the lie, there were several circumstances that could be taken as amounting to “reasonable suspension” that criminal activity was afoot. However, this was not the case where reasonable suspicion was used to initiate a Terry stop, pursuant to the strictures on such a stop (brief time, officer self-protection, inquiry into suspicious circumstances). Instead, the Terry stop had already been initiated by the traffic detention, the officer-protection functions had already been concluded by an initial pat-down and the placing of the driver in the patrol car, with no means of egress, and any remaining reasonable suspicion does not justify continued detention.
The items identified at paragraph 32 of the majority opinion do not, in my opinion, create the requisite “reasonable suspicion” to continue the lawful detention that began with the traffic stop. This is particularly true when you add in the fact that, in the words of United States v. Davis, this search “occurs over an unreasonable period of time or under unreasonable circumstances.” See 430 F.3d 345, 354 (6th Cir.2005). In my view, falsely informing the defendant that his detention will be indefinitely prolonged is an unreasonable circumstance, and continuing the detention *760 for up to an hour while continuing the deceit as to the circumstances of the detention is an unreasonable period of time.
In any event, the suspicious circumstances basically boil down to three: (1) An alleged discrepancy between Walton’s denial of any “large amounts of money” “like several thousand dollars or more” and Fisher’s observation of a “1/4 inch stack of cash.” Obviously, if the stack was in thousand-dollar bills it would be a large amount. If it was in one-dollar bills it would not be. The officer had no further information as to the denominations of this “stash” (which is no thicker than the $ 166 I now have in my wallet). It turned out to be less than $ 1600, certainly short of “several thousand dollars or more.” (2) An admission that the uncle did not have a driver’s license, and yet was driving. While this could conceivably be taken as a admission of a traffic violation (which may well have taken place in another state), I do not see that it creates any suspicion of a completely separate crime. (3) The alleged discrepancy between (a) Walton’s stating that he was going to a fashion show in New York and then to a wedding in Philadelphia and (b) White’s saying that he was going to a wedding, and then agreeing with the officer’s leading question that the wedding was in New York. Fisher admitted that he thought New York and Philadelphia were very distant, which (mistakenly) added to his suspicion.
While, in hindsight, this alleged contradiction may betray an inability to keep straight on a concocted story, this discrepancy, even when taken in conjunction with the matters analyzed above, does not, in my view, create a “reasonable suspicion” of specific criminal activity being afoot, nor make the continued detention reasonable, in light of all the circumstances.[2]
Finally, the reasonableness of any suspicion must take into account anything that detracts from this suspicion. In this case, unlike a number of comparable cases, a drug dog had already been run around the car, with negative results.[3] In addition, at the time the court finds Fisher’s suspicions “reasonable,” the license and any other checks done at that time had come back negative. Fisher’s testimony in court that he had information as to Walton’s criminal past at that time was specifically refuted by the documentary record and discounted by the district judge. Thus, the officer’s “suspicion” was particularly unreasonable in that at least one of its major pillars was concocted, and the others were, as shown above, quite shaky.
In hindsight, Officer Fisher’s deductions and actions (supported by, in my view, nothing more than a “hunch”) were bril *761 liant. They did ultimately discover a large quantity of drugs. However, in my view that cannot overcome the constitutional command that searches be “reasonable,” which this search and detention, based on hunches and lies, definitely transgressed. I therefore respectfully dissent.

. While only marginally relevant, I note that this particular officer has been cited for untruthfulness in the past, so that his tactic in dealing with this driver cannot be considered inadvertent or mistaken. See United States v. Martinez, 356 F.Supp.2d 856, 869-70 (M.D.Tenn.2005).

. This case is quite similar to United States v. Richardson, 385 F.3d 625, 630 (6th Cir.2004), in which our court considered a case involving the very same officer and remarkably similar allegations of reasonable suspicion based upon allegedly contradictory stories and peripheral considerations such as minor nervousness and movement within the car. See id. at 630-31. These cases betray a pattern of this officer "fishing" for reasonable suspicion by soliciting information that he can subject to an extremely loose standard of contradiction and then combine with any other available information to claim “reasonable suspicion.” While in some, perhaps even many, cases these tactics are permissible and lead to adequate suspicion of criminality, see, e.g., United States v. Hill, 195 F.3d 258 (6th Cir.1999) (extreme contradiction of stories, extreme implausibility of reason for trip, and extreme nervousness, among other factors), such suspicion must be judged on its reasonableness ex ante, not on the fact that, in any case that reaches us, drugs will have been found.

. In Davis, supra, a negative drug-dog run was the major reason for our court finding no further reasonable suspicion, despite much more suspicious circumstances than are present here. See 430 F.3d at 354-56.