NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0718n.06

Case No. 13-2514

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| BYRON DARNELL PRESTON, | ) | MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

FILED
Sep 12, 2014
DEBORAH S. HUNT, Clerk

BEFORE: COLE, Chief Judge; COOK and WHITE, Circuit Judges.

**COOK, Circuit Judge.** Following conviction for possession of a firearm by a felon, Byron Preston appeals, challenging the denial of his motion to suppress evidence and the reasonableness of his sentence. We affirm.

I.

The district court laid out the relevant facts as follows:

On New Year's Eve at about 9:30 p.m., Officers Jackson and Harnphanich and Sergeant Duncan saw Preston walking through an alley in a high-crime area approaching the parking lot of a liquor store. As Preston turned in the direction of the store's front door, toward which the semi-marked police car [driven by the officers] was proceeding, he appeared to see the car and, in response, to alter his path so as to avoid proceeding further in their direction. The Officers wondered if he was "casing" the store for a possible robbery.

Continuing to walk through the alley, Preston passed out of sight behind a white dumpster and lingered there a moment longer than seemed right. The Officers wondered if he was hiding something.

As the police car moved further into the parking lot, Preston appeared from the alley and walked into the lot in the direction of the car and toward the front door of the liquor store. Sergeant Duncan, the patrol car's driver, did not activate the overhead lights or siren, honk the horn, or block Preston's path. Officer Jackson, sitting in the front passenger seat—and one of three officers in the car—lowered his window and spoke to Preston in a conversational tone of voice, saying something similar to "What's up?" or "Where are you heading?" Jackson did not command Preston to "halt," "stop," "stand still," or anything similar. Officer Jackson remained inside the car and did not handle or display his firearm or give any hand signals to Preston.

Preston, in response to Officer's Jackson's "What's up?", approached the police car. He was wearing a hooded sweatshirt with his hands inside of his pockets. As Preston neared the police car, Officer Jackson became concerned that Preston might be armed. For his own safety, Officer Jackson asked something like "Are you armed?" or "Do you have a gun?" and asked to see Preston's hands. In so asking, Jackson did not command or "order" Preston to show his hands. Although Officer Jackson's unsworn synopsis of the encounter in his Preliminary Criminal Report uses the term "ordered," Officer Jackson's sworn testimony belies the characterization. He could not have been more clear that his tone of voice was conversational or that he was not loud, challenging, or demanding. The court finds his request of Preston to expose his hands was only that—a request, and nothing more. It was not an "order."

The request and accompanying question brought Preston's response: "Yes, it's in my coat." The gun was secured and this prosecution followed, Preston being found to have had a prior felony. The entire series of events lasted only a few seconds.

Charged as a felon in possession of a firearm in violation 18 U.S.C. § 922(g), Preston moved to suppress the evidence culled from the encounter, arguing that the stop violated his Fourth Amendment right against unreasonable searches and seizures. At the hearing before the Magistrate Judge (MJ) to whom the case was referred, the three police officers testified. The MJ recommended that the district court grant Preston's motion to suppress "[b]ecause the officers' encounter with Defendant went beyond a consensual encounter and lacked reasonable suspicion to justify a *Terry* stop."

The district court held an evidentiary hearing, and denied the motion, concluding that the events constituted a consensual encounter unprotected by the Fourth Amendment. Important to

that assessment by the district court was that Preston approached the patrol car and that Officer Jackson "did not command or 'order' Preston to show his hands."

Preston stipulated to a bench trial, and the district court found him guilty. At sentencing, the court decreased his offense level by two for accepting responsibility, denied his motion for a downward variance, and sentenced him to 77 months' imprisonment—the low end of the guidelines range. Preston appeals.

II.

*A. Motion to Suppress*

Preston challenges the denial of his motion to suppress, arguing that the district court clearly erred in sizing up three facts central to its holding. First, Preston contests the finding that he approached the cruiser, bringing our attention to the officers' testimony that they "pulled alongside" him. Though that is true, Officer Jackson repeatedly testified that Preston walked toward the cruiser as they approached, and Sergeant Duncan corroborated this testimony. Indeed, Preston's attorney stated at the suppression hearing that "according to everybody's testimony, . . . [he] walk[ed] toward the police car."

Second, Preston disputes the district court's determination that Officer Jackson preliminarily greeted him before asking to see his hands. Officer Jackson testified that he asked Preston "where he was heading and what he was doing." Whether he did bears on Preston's claim that he faced a compulsory atmosphere in the officers' presence. Preston maintains that Officer Jackson testified falsely, noting that Jackson's written preliminary report as well as testimony from the other police in the vehicle failed to corroborate Jackson's testimony. But neither the preliminary report nor the other officers' testimony directly contradicted Officer Jackson—his testimony added only a detail from the encounter. The other officers said they

could not remember or never heard the question, and Officer Jackson explained that he included what he thought were "just the important facts" in the preliminary complaint report. Moreover, the district court pressed Jackson about the preliminary encounter and found his sworn testimony credible. We must give considerable deference to this credibility determination. *See United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005).

Last, Preston quarrels with the court's finding that "it was not an order" for Preston to show his hands because the officer stated in his preliminary complaint report that he "ordered the subject to place his hands in the air."

At the suppression hearing held by the district court, however, Officer Jackson testified—corroborated by Sergeant Duncan—that he used a "conversational tone" and "asked" Preston whether he could see his hands and whether he was armed. The district court acknowledged the inconsistency with the unsworn preliminary synopsis but still found Officer Jackson's testimony credible. *See Hudson*, 405 F.3d at 431.

Reviewing Preston's three factual contentions in the light most favorable to the government, *see United States v. Rodriguez-Suazo*, 346 F.3d 637, 643 (6th Cir. 2003), we are not "left with the definite and firm conviction that a mistake has been committed," *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010).

Having discerned no clear error in the district court's factual findings, we next turn to Preston's claim that the court erred in concluding that he consented to talk with the officers; in Preston's view, "a reasonable person would have believed that he . . . was not free to walk away." *See United States v. Alston*, 375 F.3d 408, 411 (6th Cir. 2004); *see also Florida v. Bostick*, 501 U.S. 429, 434 (1991). Courts recognize that a reasonable person may not feel free to leave in the face of coercive police behavior, including: "the threatening presence of several

officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009).

The record adequately supports the district court's finding that, unprompted by the officers, Preston voluntarily walked toward the police car through the well-lit parking lot of the liquor store, with customers coming in and out, and supports the court's assessment that the cruiser remained in the middle of the parking lot, where Preston had an unobstructed path to walk away. The district court found that Jackson rolled down his window and asked in a conversational tone to see Preston's hands and whether he possessed a weapon. Jackson testified that he remained in the vehicle without opening his door, without drawing his gun, and without accusing Preston of wrongdoing, or physically touching him. *See United States v. Campbell*, 486 F.3d 949, 956 (6th Cir. 2007) ("[N]o seizure occurs when police ask questions of an individual . . . so long as the officers do not convey a message that compliance with their requests is required.") Under these circumstances, we find no error in the conclusion that a reasonable person would feel free to end the encounter and walk away. *See United States v. Broomfield*, 417 F.3d 654, 656 (7th Cir. 2005) (deeming encounter consensual where police told man to stop and take his hands out of his pockets); *see also United States v. Falls*, 533 F. App'x 505, 508 (6th Cir. 2013) (per curiam) (same, where two officers "asked" defendant to "stop" and "come here," before asking defendant whether he possessed any weapons).

*B. Sentence*

Preston also argues that the district court imposed a substantively unreasonable sentence. He urges this court to determine that the district court should have varied downward in light of his "extraordinary acceptance of responsibility" and the government's refusal to move for a one-

level reduction to his offense level under U.S.S.G. § 3E1.1(b). This court may vacate a sentence only upon concluding that the district court abused its discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).

Preston fails to rebut the presumption of reasonableness that applies to his within-guidelines sentence. *See United States v. Overmyer*, 663 F.3d 862, 864 (6th Cir. 2011). The district court accounted for Preston's acceptance of responsibility by reducing his offense level two points. *See* U.S.S.G. § 3E1.1(a). It reasonably declined a variance, concluding that Preston exhibited only an "ordinary" acceptance of responsibility. Rather than plead guilty, Preston "pre-tried" the case in a "fairly lengthy evidentiary hearing" that required the government to call three witnesses. Then, he proceeded to a bench trial. Thus, the district court acted within its broad discretion in denying Preston's motion for a variance. *See United States v. Khalil*, 279 F.3d 358, 371 (6th Cir. 2002) (noting that reductions for acceptance of responsibility are "rare" under U.S.S.G. § 3E1.1 when the defendant exercises his right to trial); *cf. United States v. Collins*, 683 F.3d 697, 707 (6th Cir. 2012) (holding that the government permissibly withheld additional reduction for acceptance of responsibility where it needed to undertake trial-like preparations to defend a motion to suppress).

III.

We AFFIRM.

**HELENE N. WHITE, Circuit Judge (concurring).** I agree with my dissenting colleague that this is a close case and acknowledge the reality of his observations. The police possess considerable authority simply by virtue of the uniform and most citizens are hesitant to refuse police requests, even when not presented as orders. Many criminal defendants would have buttressed a failed motion to suppress under the Fourth Amendment by politely refusing a police request, continuing on their way, and waiting for a clear exercise of authority. That they did not feel free to do so, however, has not been deemed sufficient under the case law. The *Mendenhall* test[1], which asks whether a reasonable person would have believed that he was not free to leave, looks to police action, words, weapons and threats, and gives little weight to the inherent coercion in being approached or addressed by a police officer. Here, the district court could have properly granted the motion based on the magistrate judge's findings of fact and conclusions of law. But the court held its own evidentiary hearing and was thus entitled to find its own facts, if not clearly erroneous. Because the conclusion that Preston voluntarily walked toward the police cruiser to engage with Jackson when he could have stayed where he was and answered Jackson from where he stood, and then continued on his way into or away from the store, is adequately supported by the record, I agree that we are compelled to affirm.

---

[1] *United States v. Mendenhall*, 446 U.S. 544, 553-55 (1980).

**COLE, Chief Judge, dissenting.** Byron Preston, a 27-year-old African-American man, walked alone at 9:30 p.m. toward a liquor store in a high-crime area of Detroit. It was wintertime, he wore a dark hoodie, and his hands were in his pockets. Three officers pulled their cruiser into the store's parking lot. They were armed and dressed in full uniform. Officer Jackson spoke to Preston, asking him, "What up, where are you headed to," and then quickly requested Preston to remove his hands from his pockets. Would you feel free to ignore the three officers and continue to the store? I would not. Nor would Preston, or any other reasonable person, including law-abiding individuals.

One is "seized" by police interaction—and therefore deserves the Fourth Amendment's protection—when, "in view of all of the circumstances surrounding the incident, a reasonable person [in his shoes] would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). This standard is an objective one. *United States v. Drayton*, 536 U.S. 194, 202 (2002). A person is not seized if the interaction is consensual, but it is the government's burden to establish that the interaction was consensual. *See Florida v. Royer*, 460 U.S. 491, 497 (1983). Whether facts amount to a consensual encounter or seizure is a question we review de novo. *United States v. Avery*, 137 F.3d 343, 348 (6th Cir. 1997).

Many factors influence whether an encounter was truly consensual. "[W]ords alone may be enough to make a reasonable person feel that he would not be free to leave." *United States v. Richardson*, 385 F.3d 625, 629 (6th Cir. 2004). So too the "threatening presence of several officers" or "the display of a weapon by an officer." *Mendenhall*, 446 U.S. at 554. An encounter with the police is less likely to be consensual when multiple officers single out a person among other civilians. "The police not only carry legitimate authority but also exercise power free from immediate check, and when the attention of several officers is brought to bear

on one civilian the imbalance of immediate power is unmistakable." *United States v. Drayton*, 536 U.S. 194, 210 (2002) (Souter, J., dissenting). Such a display of power "may overbear a normal person's ability to act freely, even in the absence of explicit commands or the formalities of detention." *Id.*

That an officer "asked" but did not "order" a person to comply is relevant but not dispositive in determining whether an encounter was consensual. An otherwise non-consensual encounter with the police "does not lose its coercive character simply because [the officer] was referred to on the record as having 'asked' for [the defendant's] compliance as opposed to 'ordering' it. Such a distinction is purely semantic." *United States v. Beauchamp*, 659 F.3d 560, 569 (6th Cir. 2011). This court has found a defendant seized by an officer "asking" a question when a reasonable person would not have felt free to leave and ignore the request. *See id.*; *United States v. Smith*, 594 F.3d 530, 539 (6th Cir. 2010) (holding that the defendant was seized once the officer "asked [him] to stop"); *Richardson*, 385 F.3d at 630 (holding that the defendant was seized when the officer "asked him to remain behind the vehicle" by saying, "Okay, just hang out right here for me, okay?"). In fact, in *United States v. Richardson*, the officer "did not display an intimidating demeanor or use coercive language." 385 F.3d at 630. "Regardless of [the officer's] demeanor," this court held, "his words alone were enough to make a reasonable person in [the defendant's] shoes feel that he would not be free to walk away and ignore [the officer's] request." *Id.*

Of course, the Supreme Court has made clear that "no seizure occurs when police ask questions of an individual . . . so long as the officers do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 437 (1991). But officers convey a message that compliance is required—that is, a person is seized—when "the person to

whom the questions are put [does not remain] free to disregard the questions and walk away." *Mendenhall*, 446 U.S. at 554.

Here, after hearing the officers' testimony, the magistrate judge concluded that, "considering the totality of the circumstances, a reasonable person would have believed he was not free to leave." The district judge, after holding a second evidentiary hearing, disagreed. The district judge found the encounter consensual because "Preston was not hemmed in, pressed, commanded, or signaled to do anything. He was hailed in . . . [a] conversational tone . . . : 'Hey! What's up?' . . . His choice was to engage and walk over to the side of the car where Officer Jackson sat. And when he chose a closer encounter, the concern for officer safety became greater and justified a request—again, not an 'order,' but a *request*—to remove his hands from his pockets . . . ."

The district judge found that Officer Jackson's initial words to Preston were "something similar to 'What's up?' or 'Where are you heading?'" As the government points out in its brief, Officer Jackson testified that he probably said "What up, where are you heading to." The district court's analysis proceeds as if Officer Jackson said only "What's up?," or as if these two questions are the same, but "What's up?" and "Where are you heading?" evoke distinct responses from citizens. A reasonable person might feel free to continue on his way in response to "What's up?," as the district court explained. But "Where are you heading?," asked at night in the middle of a parking lot by a uniformed officer flanked by his colleagues, is not so easily ignored. It is not a question typical of strangers consensually interacting on the street. Coming from a police officer in this setting, the question suggested that Preston should answer.

Here, three uniformed officers, armed and riding in a police cruiser at night, engaged Preston in a parking lot. Few other people were nearby. The officers asked where Preston was

heading and requested that he remove his hands from his pockets.  The entire encounter lasted "only a few seconds."  In reality, few people would feel free to ignore the police officers' show of authority, disregarding these two questions and walking away.  *See Mendenhall*, 446 U.S. at 554.  A reasonable person would have felt he must do what Preston did—comply with the request.  Once Preston complied, he was seized.  *See Brendlin v. California*, 551 U.S. 249, 254 (2007) ("A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission . . . .").

This is a close case.  Indeed, two federal judges conducted evidentiary hearings and reached opposite conclusions.  In view of all the circumstances surrounding the incident, the government has not met its burden to prove that the encounter was consensual.  I would find that Preston did not voluntarily interact with the police, and the district court erred by holding otherwise.  I therefore respectfully dissent.