COLE, Chief Judge,
dissenting.
Byron Preston, a 27-year-old African-American man, walked alone at 9:30 p.m. toward a liquor store in a high-crime area of Detroit. It was wintertime, he wore a dark hoodie, and his hands were in his pockets. Three officers pulled their cruiser into the store’s parking lot. They were armed and dressed in full uniform. Offi *501 cer Jackson spoke to Preston, asking him, “What up, where are you headed to,” and then quickly requested Preston to remove his hands from his pockets. Would you feel free to ignore the three officers and continue to the store? I would not. Nor would Preston, or any other reasonable person, including law-abiding individuals.
One is “seized” by police interaction— and therefore deserves the Fourth Amendment’s protection — when, “in view of all of the circumstances surrounding the incident, a reasonable person [in his shoes] would have believed that he was not free to leave.” United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), This standard is an objective one. United States v. Drayton, 536 U.S. 194, 202, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). A person is not seized if the interaction is consensual, but it is the government’s burden to establish that the interaction was consensual. See Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). Whether facts amount to a consensual encounter or seizure is a question we review de novo. United States v. Avery, 137 F.3d 343, 348 (6th Cir.1997).
Many factors influence whether an encounter was truly consensual. “[W]ords alone may be enough to make a reasonable person feel that he would not be free to leave.” United States v. Richardson, 385 F.3d 625, 629 (6th Cir.2004). So too the “threatening presence of several officers” or “the display of a weapon by an officer.” Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870. An encounter with the police is less likely to be consensual when multiple officers single out a person among other civilians. “The police not only carry legitimate authority but also exercise power free from immediate check, and when the attention of several officers is brought to bear on one civilian the imbalance of immediate power is unmistakable.” United States v. Drayton, 536 U.S. 194, 210, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002) (Souter, J., dissenting). Such a display of power “may overbear a normal person’s ability to act freely, even in the absence of explicit commands or the formalities of detention.” Id.
That an officer “asked” but did not “order” a person to comply is relevant but not dispositive in determining whether an encounter was consensual. An otherwise non-consensual encounter with the police “does not lose its coercive character simply because [the officer] was referred to on the record as having ‘asked’ for [the defendant’s] compliance as opposed to ‘ordering’ it. Such a distinction is purely semantic.” United States v. Beauchamp, 659 F.3d 560, 569 (6th Cir.2011). This court has found a defendant seized by an officer “asking” a question when a reasonable person would not have felt free to leave and ignore the request. See id.; United States v. Smith, 594 F.3d 530, 539 (6th Cir.2010) (holding that the defendant was seized once the officer “asked [him] to stop”); Richardson, 385 F.3d at 630 (holding that the defendant was seized when the officer “asked him to remain behind the vehicle” by saying, “Okay, just hang out right here for me, okay?”). In fact, in United States v. Richardson, the officer “did not display an intimidating demeanor or use coercive language.” 385 F.3d at 630. “Regardless of [the officer’s] demeanor,” this court held, “his words alone were enough to make a reasonable person in [the defendant’s] shoes feel that he would not be free to walk away and ignore [the officer’s] request.” Id.
Of course, the Supreme Court has made clear that “no seizure occurs when police ask questions of an individual ... so long as the officers do not convey a message that compliance with their requests is re *502 quired.” Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). But officers convey a message that compliance is required — that is, a person is seized — when “the person to whom the questions are put [does not remain] free to disregard the questions and walk away.” Mendenhall, 446 U.S. at 554, 100 S.Ct. 1870.
Here, after hearing the officers’ testimony, the magistrate judge concluded that, “considering the totality of the circumstances, a reasonable person would have believed he was not free to leave.” The district judge, after holding a second evi-dentiary hearing, disagreed. The district judge found the encounter consensual because “Preston was not hemmed in, pressed, commanded, or signaled to do anything. He was hailed in ... [a] conversational tone ...: ‘Hey! What’s up?’ ... His choice was to engage and walk over to the side of the car where Officer Jackson sat. And when he chose a closer encounter, the concern for officer safety became greater and justified a request — again, not an ‘order,’ but a request — to remove his hands from his pockets.... ”
The district judge found that Officer Jackson’s initial words to Preston were “something similar to ‘What’s up?’ or ‘Where are you heading?’ ” As the government points out in its brief, Officer Jackson testified that he probably said “What up, where are you heading to.” The district court’s analysis proceeds as if Officer Jackson said only “What’s up?,” or as if these two questions are the same, but “What’s up?” and “Where are you heading?” evoke distinct responses from citizens. A reasonable person might feel free to continue on his way in response to “What’s up?,” as the district court explained. But “Where are you heading?,” asked at night in the middle of a parking lot by a uniformed officer flanked by his colleagues, is not so easily ignored. It is not a question typical of strangers consensually interacting on the street. Coming from a police officer in this setting, the question suggested that Preston should answer.
Here, three uniformed officers, armed and riding in a police cruiser at night, engaged Preston in a parking lot. New other people were nearby. The officers asked where Preston was heading and requested that he remove his hands from his pockets. The entire encounter lasted “only a few seconds.” In reality, few people would feel free to ignore the police officers’ show of authority, disregarding these two questions and walking away. See Mendenhall, 446 U.S. at 554, 1000 S.Ct. 1870. A reasonable person would have felt he must do what Preston did — comply with the request. Once Preston complied, he was seized. See Brendlin v. California, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (“A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission _”).
This is a close case. Indeed, two federal judges conducted evidentiary hearings and reached opposite conclusions. In view of all the circumstances surrounding the incident, the government has not met its burden to prove that the encounter was consensual. I would find that Preston did not voluntarily interact with the police, and the district court erred by holding otherwise. I therefore respectfully dissent.