OPINION
PER CURIAM.
Antonio Rodriguez entered a conditional guilty plea to possession with intent to distribute five kilograms or more of cocaine and one kilogram or more of heroin, in violation of 21 U.S.C. § 841(a). He now appeals the denial of his motion to suppress. We affirm.
Michigan State Police Trooper Dennis Diggs, the sole witness at the suppression hearing, testified that on the morning of December 1, 2009, he was sitting in a marked police car on the median of 1-94, monitoring eastbound traffic. Rodriguez drove by in a Kia Sedona van, and Diggs noticed that when Rodriguez passed by the police car, he leaned back in his seat in an apparent attempt to hide behind the door post. Diggs pulled onto the interstate and began following Rodriguez, and eventually stopped him for driving too closely behind a semi-truck.
Rodriguez informed Diggs that he was traveling to his cousin’s bachelor party, which was on a Thursday night. Rodriguez did not know the date of his cousin’s wedding. Diggs directed Rodriguez to stand in front of the police car while Diggs sat in the police car and checked his license, registration, and insurance papers. After completing the record check, Diggs motioned Rodriguez to get into the back seat of the police car, at which point he returned his papers, told him that he would not be ticketed, and briefly advised him of the need to drive at a safe distance behind other vehicles. At the end of the discussion, Diggs told Rodriguez that he was “good to go.” Immediately after making that statement, however, Diggs said, “Let me ask you something,” and proceeded to ask Rodriguez additional questions about his travel plans, as well as questions about his arrest history and whether there was anything illegal in his van. After approximately four minutes of questioning, Diggs asked Rodriguez for permission to search his van, and Rodriguez consented. Ultimately, law enforcement officers recovered two kilograms of heroin and ten kilograms of cocaine from a hidden compartment in the van.
Rodriguez filed a motion to suppress, arguing that he was stopped without probable cause and that even if the initial stop was valid, he was illegally detained after the purpose of the stop was completed. After the district court denied the motion, Rodriguez entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. The district court sentenced him to 120 months in prison, to be followed by five years of supervised release.
In an appeal of the denial of a motion to suppress, we review the district court’s factual findings for clear error and its legal conclusions de novo. United States v. Bell, 555 F.3d 535, 539 (6th Cir.2009). “When a district court has denied the motion to suppress, we must consider the evidence in the light most favorable to the government.” Id. (internal quotation marks omitted).
Rodriguez first argues that Diggs did not have probable cause to initiate the traffic stop. “A police officer may legally stop a car when he has probable cause to believe that a civil traffic violation has occurred.” United States v. Torres-Ramos, 536 F.3d 542, 550 (6th Cir.2008). *18 Diggs, whose testimony the district court found “highly credible,” testified that Rodriguez was driving too close to the semi-truck in front of him, a violation of Michigan Compiled Laws § 257.643(1). Rodriguez has not provided any “contradictory testimony” to show that he was not driving too close to the semi-truck. United States v. Garrido, 467 F.3d 971, 979 (6th Cir.2006) (citation omitted). Rather, he argues that the stop was unwarranted because he was neither speeding nor driving too slowly, he acted in a typical manner by pulling behind another vehicle after he noticed the police car behind him, and Diggs could not reasonably have thought that he was trying to hide behind the door post. At most, these arguments suggest that Diggs had an ulterior motive for the traffic stop, which is irrelevant to its legality. See id. at 977 (“A police officer may effect a traffic stop of any motorist for any traffic infraction, even if the officer’s true motive is to detect more extensive criminal conduct.” (quoting United States v. Townsend, 305 F.3d 537, 541 (6th Cir.2002))). In light of Diggs’s uncontested testimony that Rodriguez committed a traffic violation, we find no error in the district court’s determination that the initial traffic stop was lawful.
Rodriguez further argues that even if the traffic stop was justified, he was unlawfully detained after the completion of the stop. During the suppression hearing, Diggs testified that once he told Rodriguez that he was “good to go,” the purpose of the traffic stop was complete. It is well settled that once the purpose of the traffic stop is completed, a police officer “may not ‘further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.’ ” Torres-Ramos, 536 F.3d at 550 (quoting United States v. Blair, 524 F.3d 740, 752 (6th Cir.2008)); see also United States v. Hill, 195 F.3d 258, 264 (6th Cir.1999) (“Once the purpose of the traffic stop is completed, a motorist cannot be further detained unless something that occurred during the stop caused the officer to have a reasonable and articulable suspicion that criminal activity was afoot.”) (citations omitted), cert. denied, 528 U.S. 1176, 120 S.Ct. 1207, 145 L.Ed.2d 1110 (2000). However, the district court concluded that Rodriguez was not detained because a reasonable person would have believed that he was free to go after being told that he was “good to go.”
As a general matter, a police officer does not violate the Fourth Amendment by asking an individual questions after the initial traffic stop has ended. United States v. Branch, 537 F.3d 582, 588 (6th Cir.2008) (citing United States v. Erwin, 155 F.3d 818, 823 (6th Cir.1998)) (en banc) (noting that an “officer does not violate the Fourth Amendment merely by approaching an individual, even when there is no reasonable suspicion that a crime has been committed, and asking him whether he is willing to answer some questions.”). Instead, “[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a ‘seizure’ has occurred.” Terry v. Ohio, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Therefore, “law enforcement officers may ask citizens ‘general questions without having any reasonable suspicion of criminal activity, so long as the officers refrain from the type of intimidating behavior that would lead a reasonable person to believe that the person was not free to leave.’ ” United States v. Davis, 514 F.3d 596, 607 (6th Cir.2008) (quoting United States v. Waldon, 206 F.3d 597, 603 (6th Cir.2000)).
*19 For example, in United States v. Richardson, 385 F.3d 625, 630 (6th Cir.2004), we held that a reasonable person would not feel free to leave after the conclusion of a traffic stop where a police officer told the driver to “just hang out right here for me, okay?” However, words alone may not be enough in every instance. “The test is not whether police expressly instruct a person not to leave, but whether the totality of the circumstances would convey to a reasonable person that she is not free to leave.” United States v. Williams, 615 F.3d 657, 665 (6th Cir.2010) (citing United States v. Drayton, 536 U.S. 194, 201, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002) and Florida v. Bostick, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)). As part of this analysis, we have identified several factors as evidence of a seizure: “ ‘the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer’s request might be compelled.’ ” Williams, 615 F.3d at 662 (quoting United States v. Campbell, 486 F.3d 949, 954 (6th Cir.2007)). We have also recognized “a criminal accusation by law enforcement as a factor indicating that an individual is seized.” Id. at 664 (citing Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)).
None of these factors are present in this case. Diggs was the only officer questioning Rodriguez. Diggs never displayed his weapon, touched Rodriguez, or accused Rodriguez of a crime. As the district court noted, Diggs was “relaxed, polite, and respectful” and there was “nothing bullying or accusatory about Diggs’ tone.” After telling Rodriguez that he was “good to go,” Diggs did not ask Rodriguez to wait or remain in the police car. Diggs merely resumed his discussion with Rodriguez by saying, “Let me ask you something.” We have previously found that a similar question, when asked in a nonthreatening manner, does not indicate that a person is seized. See United States v. Moore, 675 F.2d 802, 808 (6th Cir.1982) (no seizure where DEA agent approached defendant and asked “Can I ask you a few questions” in nonthreatening manner).
However, during the four minutes of questioning that followed Diggs’ “good to go” comment, Rodriguez was seated in the back of the police cruiser. In United States v. Richardson, 949 F.2d 851, 856 (6th Cir.1991), we found that when the defendant was placed in the police cruiser, he was seized within the meaning of the Fourth Amendment. Nevertheless, Richardson did not establish a bright-line rule. There were other factors present in that case which led to the conclusion that a person would not believe that he was free to leave: the defendant was approached by four officers and informed that he was the subject of a drug investigation; the officers immediately asked for consent to search the vehicle; and when the defendant declined to consent to the search, he was placed in the back of an unmarked police car. Id. In contrast, Rodriguez had been standing on the side of the road while Diggs checked his paperwork. Diggs testified that he motioned for Rodriguez to sit in the police car to get out of the cold. Under these circumstances, we conclude that no seizure took place, and therefore there was no need for Diggs to have reasonable and articulable suspicion to ask additional questions after the purpose of the traffic stop was complete.
In the alternative, we find that reasonable suspicion did exist. The existence of reasonable suspicion is a mixed question of law and fact that we review de novo. Torres-Ramos, 536 F.3d at 550. Nonetheless, in light of the “institutional advan *20 tage” possessed by the district court, including its ability to observe the demeanor of witnesses, we give “due weight” to the inferences that the district court draws from the facts. Id. (citation omitted).
“Reasonable suspicion requires specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the continued detention of a motorist after a traffic stop.” Bell, 555 F.3d at 540 (quoting United States v. Smith, 263 F.3d 571, 588 (6th Cir.2001)). “Reviewing courts ‘must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.’ ” United States v. Ellis, 497 F.3d 606, 613 (6th Cir.2007) (quoting United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (internal quotation marks omitted)).
At the suppression hearing, Diggs identified several factors that led him to suspect criminal activity: 1) Rodriguez leaned back in his seat when he passed the patrol car in an apparent attempt to hide his face behind the door post; 2) Rodriguez immediately slowed down when he passed the police car; 3) the stretch of 1-94 between Chicago and Detroit is a pipeline corridor for drugs; 4) the van smelled strongly of air fresheners, which are commonly used to mask the odor of drugs; 5) the van was not registered to Rodriguez; 6) Rodriguez stated that he was going to his cousin’s bachelor party, but he did not know the date of the wedding; and 7) Rodriguez said that the party was taking place on Thursday, which seemed like an unusual night for a bachelor party.
We agree with the district court that these factors, viewed in their totality, were sufficient to create a reasonable suspicion of illegal activity. As Rodriguez points out, some of these factors are similar to those that we have assigned little weight in other cases, such as traveling between a source and destination city for narcotics, see Townsend, 305 F.3d at 543, and others are not particularly incriminating. For example, Diggs himself testified that it is not unusual for drivers to slow down when they see a police car on the highway. The question, however, “is not whether there is a possible innocent explanation for each of the factors, but whether all of them taken together give rise to reasonable suspicion that criminal activity may be afoot.” Garrido, 467 F.3d at 982 (citation omitted); see Ellis, 497 F.3d at 614. Viewing the factors together, and recognizing that Diggs “was entitled to assess the circumstances ... in light of his experience as a police officer and his knowledge of drug courier activity,” we conclude that “the brief detention was a reasonable response to the totality of the circumstances.” Ellis, 497 F.3d at 614 (citation omitted).
For these reasons, the district court’s judgment is AFFIRMED.