[Cite as *State v. McDowell*, 2013-Ohio-5300.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 13AP-229 |
| | | (C.P.C. No. 12CR-2923) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Jordan E. McDowell, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 3, 2013

*Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

*Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

O'GRADY, J.

{¶ 1} Defendant-appellant, Jordan E. McDowell, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas. Because the trial court did not err in denying appellant's motions to suppress, we affirm.

I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} On June 12, 2012, appellant was indicted for carrying a concealed weapon, in violation of R.C. 2923.12, a fourth degree felony. On September 25 and October 25, 2012, he filed motions to suppress the statements he made to police and the evidence obtained by police. Plaintiff-appellee, the State of Ohio, opposed the motions, and the trial court held a hearing on the matter on March 13, 2013. At the hearing, Columbus Police Officer Dustin Green testified for the state and relayed the following account of the morning in question.

{¶ 3}   On May 23, 2012, Green was on directed patrol looking for the "Hilltop Creeper."  (Tr. 6.)  The Hilltop Creeper was a moniker given to an individual who was burglarizing homes in the Hilltop area on the west side of Columbus.  Green was told that the Hilltop Creeper was a black male, who was entering homes from alleyways between 4:00 and 6:00 a.m.

{¶ 4}   At approximately 4:30 a.m., Green encountered appellant walking in an alley in that area.  He parked his cruiser about 20-to-25 feet away from appellant and did not activate the light bar on his cruiser.  Green got out, approached appellant, and initially engaged him with some basic questions.  Specifically, Green asked appellant where he was coming from, where he was headed, and what he was up to that night.  Green considered this a casual conversation.  After speaking with appellant for one or two minutes, Green admitted he had no reason to believe appellant was involved in the Hilltop Creeper burglaries, or that appellant had done anything wrong that night.  However, Green asked appellant for his identification ("ID"), and appellant complied.

{¶ 5}   Once appellant handed over his ID, Green stepped back to the side of his cruiser where he wrote down information from the ID on a notepad.  Green denied getting into his cruiser or running appellant's information through his computer system to check for outstanding warrants at that time.  Green testified that he held appellant's ID for "[m]aybe 30 seconds" before returning it.  (Tr. 11.)  He had the ID just long enough to write down appellant's name, license number, birthday, and basic description, in order to pass that information along to detectives working on the Hilltop Creeper case.  Green stated he did not ask appellant any questions or otherwise speak with appellant while he was in possession of the ID.

{¶ 6}   After returning the ID to appellant, Green testified, "[w]e talked a little bit more and I asked him if he had any weapons on him. * * * He hesitated for a few seconds, and then he told me that he didn't want to lie to me and that he had a .38 on his hip."  (Tr. 11.)  Green stated he asked the weapons question for his own safety.  After appellant answered in the affirmative, Green confiscated the gun and arrested appellant.

{¶ 7}   According to Green, the entire encounter lasted two or three minutes, during which he did not order appellant to stop or halt, raise his voice, or use forceful language.  He did not say " 'before I let you go' " before asking the weapons question, nor did he do anything to indicate to appellant that he was in custody or not free to leave.  (Tr.

36.)  Green was the only officer present, he did not draw his weapon, and he did not touch appellant before he confiscated the gun.  Regarding the request for ID, Green stated that he did not order appellant to produce his ID, and he could not have done anything about it had appellant refused.  Green categorized the encounter as a noncustodial "field interview," which he described as follows:

> Basically a field interview is where you're talking to somebody, you try to get their personal information from them to see what they're doing in the area and then basically see if they're connected to anything that's been going on in the area, or if they're just doing anything that's bad.

(Tr. 13-14.)

{¶ 8}  Appellant also testified at the suppression hearing.  He stated that he was walking down the alley on his way home from a friend's house between 4:15 and 4:30 a.m. when Green pulled up in his cruiser.  He stated Green parked the cruiser approximately six feet from him and got out.  He confirmed Green's introductory questions of where he was coming from and where he was going, and added that Green told him this was a routine stop and he was looking for suspicious people.  Green then asked appellant for his ID.

{¶ 9}  At that point, appellant's account differed significantly from Green's because he claimed Green went back to his cruiser with the ID and ran a warrants check, which took about five minutes.  Appellant stated he knew the check was run because Green came back and told him, "[he] didn't have any warrants, [he] was clean."  (Tr. 24.)  Also, while Green was still holding the ID, appellant testified that Green said, "before I let you go, do you have any weapons or anything on you?  Can I check you?"  (Tr. 24.)  Appellant confirmed that he admitted, "I'm not going to lie to you, I have a revolver on my hip."  (Tr. 25.)

{¶ 10} Appellant further testified that he did not feel like he could walk away because Green was an officer of the law, and he did not want to look suspicious.  He felt he had to stay and comply with Green's requests.

{¶ 11} At the conclusion of the testimony, the trial court denied appellant's motions to suppress.  The court found the evidence did not suggest Green did anything that would make a reasonable person believe that he or she could not leave during the conversation.  The court credited Green's testimony over appellant's; specifically, the

testimony that Green gave appellant's ID back before asking whether appellant was carrying any weapons. The court further commented that, even if Green had not given the ID back, it did not appear that he conveyed any sort of message to appellant that compliance with additional questions was required. Therefore, appellant's constitutional rights were not violated.

{¶ 12} After the trial court denied the motions to suppress, appellant pleaded no contest to carrying a concealed weapon, was found guilty, and sentenced accordingly. This appeal followed.

## II. ASSIGNMENT OF ERROR

{¶ 13} Appellant presents the following assignment of error for our review:

> The lower court erred by overruling Appellant's motion to suppress evidence because the search conducted in this case violated the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Section 14 of the Ohio Constitution.

## III. STANDARD OF REVIEW

{¶ 14} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.*, citing *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Accordingly, an appellate court must defer to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8. However, an appellate court reviews de novo whether the trial court's conclusions of law, based upon those findings of fact, are correct. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 707 (4th Dist.1997).

## IV. DISCUSSION

{¶ 15} Initially, we note that the trial court credited Green's testimony over appellant's testimony at the suppression hearing. The court only made one explicit finding of fact: that Green gave appellant his ID back before he asked appellant whether he was carrying any weapons. However, the trial court made its ruling on appellant's motions to suppress based on Green's version of the facts. We find Green's testimony credible and the evidence adduced through him competent. Therefore, given the deference we are required to give to the trial court's factual determinations, we will

independently review appellant's assignment of error with Green's account of the morning in question as our factual basis.

{¶ 16} Appellant argues, pursuant to his sole assignment of error, that he was subjected to an unconstitutional search. This conflicts with the trial court's finding that appellant made an admission, which led to his arrest, during a consensual encounter with Green. We agree with the trial court that the interaction at issue was, indeed, a consensual encounter. Therefore, the Fourth Amendment was not implicated, and appellant's rights thereunder were not violated.

{¶ 17} The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as Ohio Constitution, Article I, Section 14, prohibit the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *State v. Mendoza*, 10th Dist. No. 08AP-645, 2009-Ohio-1182, ¶ 11, citing *Katz v. United States*, 389 U.S. 347, 357 (1967). Even so, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred" within the meaning of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 19 (1968), fn. 16; *Brendlin v. California*, 551 U.S. 249, 254 (2007).

{¶ 18} In determining whether a particular encounter constitutes a "seizure," and thus implicates the Fourth Amendment, the question is whether, in view of all the circumstances surrounding the encounter, a reasonable person would believe he or she was "not free to leave" or "not free to decline the officers' requests or otherwise terminate the encounter." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *Florida v. Bostick*, 501 U.S. 429, 439 (1991); *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988); *Florida v. Royer*, 460 U.S. 491, 502 (1983) (plurality opinion). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " *Bostick* at 437, quoting *Chesternut* at 569. "[T]he 'reasonable person' test presupposes an *innocent* person." (Emphasis sic.) *Bostick* at 438, citing *Royer* at 519, fn. 4 (Blackmun, J., dissenting) ("The fact that [respondent] knew the search was likely to turn up contraband is of course irrelevant; the potential intrusiveness of the officers' conduct must be judged from the

viewpoint of an innocent person in [his] position."), and *Chesternut* at 574 ("This 'reasonable person' standard . . . ensures that the scope of Fourth Amendment protection does not vary with the state of mind of the particular individual being approached.").

{¶ 19} Where the encounter takes place is a factor in deciding whether it constitutes a "seizure" for purposes of the Fourth Amendment. *Bostick* at 437. More particularly, a consensual encounter occurs when the police approach a person in a public place, the police engage the person in conversation, and the person remains free not to answer or to walk away. *Royer* at 497; *Mendenhall* at 553-54. The person "may not be detained even momentarily without reasonable, objective grounds for doing so." *Royer* at 498. A consensual encounter does not implicate the Fourth Amendment or trigger its protections. *Bostick* at 434; *State v. Massey*, 10th Dist. No. 12AP-649, 2013-Ohio-1521, ¶ 20.

{¶ 20} Since the Fourth Amendment protections are not implicated in consensual encounters, a person's voluntary responses given during a consensual encounter may be used against the person in a criminal prosecution. *Bostick* at 434, citing *Royer* at 497; *State v. Taylor*, 106 Ohio App.3d 741, 749 (2d Dist.1995), citing *Mendenhall* at 559-60. During a consensual encounter, officers may ask general questions of an individual, ask to examine an individual's ID, and request consent to search an individual's belongings, even when officers have no basis for suspecting that particular individual, "as long as the police do not convey a message that compliance with their requests is required." *Bostick* at 435, citing *I.N.S. v. Delgado*, 466 U.S. 210, 216 (1984), *Florida v. Rodriguez*, 469 U.S. 1, 5-6 (1984), *Mendenhall* at 557-58, and *Royer* at 501; *Columbus v. Body*, 10th Dist. No. 11AP-609, 2012-Ohio-379, ¶ 11; *Massey* at ¶ 20.

{¶ 21} We begin our discussion of the particulars in this case by narrowing the facts worthy of specific analysis. Initially, Green parked his cruiser 20-to-25 feet away from appellant in a public alleyway, got out, and approached appellant. Green then engaged appellant with general questions about the events of his evening, which appellant answered. We recently held that simply pulling up to a public place in a police cruiser, getting out, and approaching an individual while in uniform, without an additional show of force or authority, does not implicate the Fourth Amendment. It constitutes a consensual encounter. *State v. Jennings*, 10th Dist. No. 12AP-179, 2013-Ohio-2736, ¶ 12. Furthermore, it is well-established that "mere police questioning does not constitute a

seizure."  *Bostick* at 434; *United States v. Drayton*, 536 U.S. 194, 200 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.").  Therefore, we find that the initial interaction and discourse between appellant and Green was a consensual encounter.

{¶ 22} After speaking with appellant for one or two minutes, Green asked appellant for his ID.  Green testified that he did not order appellant to produce his ID, and appellant complied.  A police officer may approach a person in a public place, engage him in conversation, and request permission to examine his ID without implicating the person's Fourth Amendment rights.  *Jennings* at ¶ 10, citing *Taylor* at 747.  Moreover, "[t]he request to examine one's identification does not make an encounter nonconsensual." *Taylor* at 747, citing *Rodriguez* at 4-6, *Delgado* at 221-22.  "The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter."  *Id.*, citing *Mendenhall* at 554, *Terry* at 16, 19.

{¶ 23} We note that the entire interaction between appellant and Green, from start to finish, did not involve an overt show of force or authority.  Green testified that he did not activate the light bar on top of his cruiser when he pulled up near appellant.  He did not order appellant to stop or halt upon approaching, nor did he raise his voice or otherwise use forceful language.  He testified that appellant was likewise calm and cooperative.  Green denied using the words "before I let you go" or otherwise indicating to appellant that he was not free to leave.  Green was the only officer present, he did not draw his weapon, and he did not physically touch appellant until the end of the encounter when he confiscated appellant's firearm.  These circumstances are, generally, indicative of a consensual encounter.  *Drayton* at 204 ("There was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice. It is beyond question that had this encounter occurred on the street, it would be constitutional.").  Therefore, we conclude that the encounter through the point when appellant handed his ID to Green was unquestionably consensual.  We determine the same about the portion of the encounter after Green handed the ID back to appellant.

{¶ 24} That leaves only the portion of the encounter when Green was holding appellant's ID as requiring further analysis. Specifically, after appellant handed his ID to Green, Green took it back to his cruiser, which was roughly 25 feet away, and held it there for 30 seconds while he copied down appellant's identifying information on a notepad. Green did not speak with appellant during that 30-second interval. Green then returned the ID to appellant before they began speaking again. Appellant argues that a reasonable person would not have believed he was free to terminate the encounter and walk away while a police officer had his ID at his cruiser 25 feet away. Therefore, appellant was seized within the meaning of the Fourth Amendment during that period. We disagree. We find neither the distance Green traveled with the ID nor the amount of time Green was holding the ID to be dispositive.

{¶ 25} In *Taylor*, the Court of Appeals for the Second District provided analysis that is instructive. A detective suspected Taylor of being a drug courier in an airport. The detective approached Taylor, they had a short conversation, and the detective asked to see Taylor's airline ticket and ID. Taylor complied. Shortly thereafter, the detective advised Taylor that he worked for the narcotics bureau and asked if he was carrying any narcotics. Taylor answered no, and the detective asked if he could search his carry-on bag. Taylor consented and the detective discovered a block of cocaine. Taylor was arrested, charged, and failed in his effort to suppress the cocaine at the trial level. On appeal, Taylor argued that he was seized when the detective asked to see his airline ticket and retained possession of it. He claimed that holding his ticket caused him to feel that he was not free to leave the encounter. The record did not indicate whether the detective actually retained Taylor's ticket; however, the court stated:

> Even if [the detective] did retain the ticket, the conversation was so short that we would be unwilling to say that retaining the ticket created a detention. If we did so, we would have to blunder through the absurd issues of whether, for example, forty seconds or one minute is too long to examine an airline ticket. We are unwilling to create such a bright-line rule.
>
> * * *
>
> [W]e do not propose that retaining a person's means of travel never amounts to a detention; we find only that holding it for this short period of time, under these facts, did not create a detention.

*Id.* at 750.

{¶ 26} We agree. We refuse to base our ruling on a particular length of time or a particular distance in this case. The inquiry before us remains, taking into account all of the circumstances surrounding the encounter between appellant and Green, whether a reasonable person would have believed he or she was free to leave, free to decline Green's requests, or otherwise free to terminate the encounter. *Mendenhall* at 554; *Bostick* at 439; *Chesternut* at 573; *Royer* at 502 (plurality opinion). Furthermore, "[o]nly when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred" within the meaning of the Fourth Amendment. *Terry* at 19, fn. 16; *Brendlin* at 254.

{¶ 27} We conclude that appellant's liberty was not restrained. As stated above, there is a total absence of physical force and overt shows of authority in this case. Appellant was asked for his ID, not ordered to produce it. He could have refused that request. Likewise, he could have asked for his ID back or otherwise terminated the encounter with Green at any time. Nothing that occurred on the morning in question would have communicated to a reasonable person that he was not free to refuse Green's requests or otherwise walk away. We, therefore, find that no seizure occurred and the interaction between appellant and Green remained a consensual encounter throughout its duration. Because the Fourth Amendment was not implicated during the encounter, appellant's voluntary statement that he was carrying a concealed weapon and the resulting evidence was not the product of an unconstitutional search or seizure. Therefore, the trial court properly denied appellant's motions to suppress. Accordingly, appellant's assignment of error is overruled.

{¶ 28} Of note before we conclude, is appellant's effort to equate his situation to the facts we encountered in *State v. Jones*, 188 Ohio App.3d 628, 2010-Ohio-2854 (10th Dist.). However, *Jones* involved an individual whose driver's license was taken by the police to run a warrant check while he was seated in the driver's seat of his parked car. Some time after taking possession of the driver's license, an officer asked Jones whether he was in possession of anything that could hurt the officers. Jones admitted that he had a knife next to him in the car. The police confiscated the knife, and the trial court subsequently granted Jones's motion to suppress the knife as evidence. The state appealed, and we affirmed the trial court's judgment. Under the circumstances in that case, we found that "no reasonable person would believe that he or she is free to terminate

the encounter and simply drive away when an officer retains his or her driver's license for the purpose of running a computer check for outstanding warrants." *Id.* at ¶ 25.

{¶ 29} Unlike in *Jones*, appellant was on foot and not in the driver's seat of a car when he was separated from his ID. Being separated from your driver's license while you are on foot does not have the same immobilizing effect as was present in *Jones*. Furthermore, Green did not take the time to run a warrant check on appellant while he was in possession of appellant's ID. Green returned the ID to appellant before additional conversation commenced, during which Green asked appellant if he was carrying any weapons. Based on these factual distinctions, we decline to use *Jones* as a basis for deciding this matter.

## V. CONCLUSION

{¶ 30} Accordingly, having overruled appellant's single assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and T. BRYANT, JJ., concur.

T. BRYANT, J., retired, formerly of the Third Appellate District, assigned to active duty under authority of the Ohio Constitution, Article IV, Section 6(C).

_____