[Cite as *State v. Kirk*, 2020-Ohio-323.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO,                :         CASE NO. CA2019-07-053

       Appellant,         :         O P I N I O N
                                               2/3/2020

                                    :

   - vs -

                                    :

JEFFREY A. KIRK,          :

       Appellee.           :

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. CV2018CR00895

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas A. Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for appellant

W. Stephen Haynes, Clermont County Public Defender, Robert F. Benintendi, 301 East Main Street, Batavia, Ohio 45103, for appellee

**M. POWELL, P.J.**

{¶ 1} Appellant, the state of Ohio, appeals a decision of the Clermont County Court of Common Pleas granting the motion to suppress of appellee, Jeffrey Kirk.

{¶ 2} On July 26, 2018, between 6:00 p.m. and 7:00 p.m., Sergeant Randall Ruehrwein was on routine patrol in the village of Williamsburg in Clermont County, Ohio.

As he was driving on State Route 133, he observed Kirk in the parking lot of a Dollar General store, by the dumpsters and loading area of the store. Kirk was attaching a large object to the front of his bicycle. Sergeant Ruehrwein parked his police cruiser approximately ten feet from Kirk, exited the cruiser, and approached Kirk. The officer did not activate the light bar or the sirens of his cruiser and did not approach Kirk with his weapon drawn.

{¶ 3} Kirk advised Sergeant Ruehrwein that he was attaching a band saw he had found on the side of the street by a residence on Hudson Street. The officer asked Kirk for identification. Kirk replied he did not have any identification on him and instead verbally provided his name and social security number. Sergeant Ruehrwein told Kirk, "I'll be back with [you] in a minute," then proceeded to his cruiser where he ran Kirk's personal information through LEADS. Within a couple of minutes, the officer learned that Kirk was subject to an extradition warrant from the commonwealth of Kentucky. Sergeant Ruehrwein returned to Kirk, advised him of the warrant, and informed him that he was going to pat him down and secure him. Before the officer could do so, Kirk fled. After a brief foot pursuit, Sergeant Ruehrwein caught Kirk and placed him under arrest. In searching Kirk incident to the arrest, the officer discovered a small vial of methamphetamine on Kirk's person.

{¶ 4} Kirk was indicted on one count of aggravated possession of drugs. He moved to suppress the evidence, arguing that he was unlawfully detained once Sergeant Ruehrwein told him, "I'll be back with [you] in a minute." The trial court conducted a hearing on the matter; Sergeant Ruehrwein was the sole witness. Four weeks after the suppression hearing, the state filed a memorandum in opposition to Kirk's motion to suppress, arguing that the officer's interaction with Kirk was a consensual encounter until the officer discovered Kirk's arrest warrant. At that point, the state argued, the officer had probable cause to arrest Kirk.

{¶ 5} On July 1, 2019, the trial court granted Kirk's motion to suppress. The trial

court found that while the initial encounter between Kirk and Sergeant Ruehrwein was consensual, it evolved into an investigatory detention without a reasonable, articulable suspicion of criminal activity when the officer told Kirk, "I'll be back with [you] in a minute." The trial court reasoned that the officer's "words alone were enough to make a reasonable person in the defendant's shoes feel that he would not be free to walk away and ignore [the officer's] implied request. As such, the defendant was illegally detained at that moment."

{¶ 6} The state appeals the decision of the trial court, raising one assignment of error:

{¶ 7} THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS.

{¶ 8} The state argues that the trial court erred in granting the motion to suppress. Specifically, the state asserts that Sergeant Ruehrwein's interaction with Kirk was a consensual encounter that did not implicate the Fourth Amendment until the officer told Kirk he was going to pat him down. The state further asserts that even if Kirk was illegally detained, the methamphetamine should not have been suppressed because its discovery did not arise from the illegal detention but rather, arose due to an intervening circumstance and/or independent source, namely, Sergeant Ruehrwein's discovery of the extradition warrant for Kirk's arrest.[1]

{¶ 9} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Vaughn*, 12th Dist. Fayette No. CA2014-05-012, 2015-

---

1. Despite the *Terry*-stop aspects of the encounter between Sergeant Ruehewein and Kirk, we decline to resolve this case on that basis as the state did not defend the motion to suppress as a *Terry* stop in the trial court, instead solely arguing that the encounter was consensual. On appeal, the state conceded during oral argument that it had waived *Terry* as a constitutional basis for justifying any detention to which Kirk was subject. We agree, as a party cannot raise new issues or legal theories for the first time on appeal because such issues or theories are deemed waived. *State v. Mehta*, 12th Dist. Butler Nos. CA2000-11-232 and CA2000-12-256, 2001 Ohio App. LEXIS 3896, *8 (Sept. 4, 2001); *State v. Walker*, 1st Dist. Hamilton No. C-150757, 2017-Ohio-9255, ¶ 26. Waiver is especially applicable in this case where the issue was not only not raised in the trial court but neither briefed nor otherwise argued on appeal.

Ohio-828, ¶ 8, citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. When considering a motion to suppress, the trial court, as the trier of fact, is in the best position to weigh the evidence in order to resolve factual questions and evaluate witness credibility. *Vaughn* at ¶ 8. In turn, when reviewing a trial court's decision on a motion to suppress, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* An appellate court, however, independently reviews the trial court's legal conclusions based on those facts and determines, without deference to the trial court's decision, whether as a matter of law, the facts satisfy the appropriate legal standard. *Id.*

{¶ 10} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. *State v. Brown*, 12th Dist. Clermont No. CA2001-04-047, 2001 Ohio App. LEXIS 5476, *5 (Dec. 10, 2001). However, not all interactions between police officers and citizens are seizures under the Fourth Amendment. *Id.* The United States Supreme Court has recognized three categories of police interactions with members of the public: (1) a consensual encounter, which requires no objective justification, (2) a brief investigatory detention, which must be supported by reasonable suspicion of criminal activity, and (3) a full arrest, which must be supported by probable cause. *State v. Wynne*, 10th Dist. Franklin No. 18AP-531, 2019-Ohio-1013, ¶ 12. A consensual encounter occurs "where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *State v. Tabler*, 10th Dist. Franklin No. 14AP-386, 2015-Ohio-2651, ¶ 21.

{¶ 11} In determining whether a particular encounter between a police officer and a citizen is a seizure and thus implicates the Fourth Amendment, the question is whether, taking into account all the circumstances surrounding the encounter, a reasonable person

would feel free to decline the officer's request or terminate the encounter. *Brown* at *5-6, citing *Florida v. Bostic*, 501 U.S. 429, 436-437, 111 S.Ct. 2382 (1991). As long as a reasonable person would feel free to disregard the officer, the encounter is consensual and no reasonable suspicion is required. *Bostic* at 434. "Under this objective test, we consider not whether the individual believed he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Columbus v. Body*, 10th Dist. Franklin No. 11AP-609, 2012-Ohio-379, ¶ 14. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868 (1968). Circumstances indicating that a person has been seized include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, the use of language or tone of voice indicating that compliance with the officer's request might be compelled, and blocking the person's path. *Brown* at *6, citing *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870 (1980); *Wynne* at ¶ 13.

{¶ 12} In finding that Sergeant Ruehrwein's statement to Kirk, "I'll be back with [you] in a minute," escalated the initial consensual encounter into a seizure, the trial court relied upon *United States v. Richardson*, 385 F.3d 625 (6th Cir.2004); *Wynne*, 2019-Ohio-1013; and *State v. McDowell*, 10th Dist. Franklin No. 13AP-229, 2013-Ohio-5300.[2]

{¶ 13} *Richardson* involved the traffic stop of a vehicle occupied by four individuals;

---

2. The trial court also cited *State v. Tabler*, 10th Dist. Franklin No. 14AP-386, 2015-Ohio-2651, as being "[o]n the other end of the spectrum." *Tabler* involved a police officer's encounter with three individuals seated in a running vehicle parked on the street. Two of the three produced their driver's license and/or identification card and Tabler verbally provided his name and social security number. The officer then took the identification materials to his cruiser where he ran a warrant check on all three individuals. Both the trial court and appellate court ruled that the initial consensual encounter between the officer and the three individuals escalated into an investigative detention when the officer retained the identification materials to run a warrant check. The appellate court reasoned that "no reasonable person in that situation would have believed they were free to leave or decline the officer's requests." *Id.* at ¶ 37. *Tabler* is inapplicable here as Kirk was not in a vehicle and Sergeant Ruehrwein did not take identification materials to his cruiser.

Richardson was a passenger. The police officer asked the driver to exit the vehicle and stand at the rear of the vehicle while the officer completed the traffic stop. After the traffic stop was completed, the officer shook the driver's hand. As the driver turned around to return to his vehicle, the officer asked a few more questions and then told the driver to either "wait where he was" or "just hang out right here for me, okay." Ultimately, Richardson was found in possession of a firearm and subsequently indicted for possession of a firearm by a convicted felon. He successfully moved to suppress the evidence and the prosecution appealed.

{¶ 14} The Sixth Circuit Court of Appeals found that the traffic stop ended when the officer gave the citation to the driver and shook his hand. At that time, the driver was free to leave but the officer then told him to remain behind the vehicle. In determining whether a particular encounter between an officer and a citizen constitutes a seizure, the Sixth Circuit observed that "words alone may be enough to make a reasonable person feel that he would not be free to leave." *Richardson*, 385 F.3d at 629. The court then held that "[the officer's] words alone were enough to make a reasonable person in [the driver's] shoes feel that he would not be free to walk away and ignore [the officer's] request. When the driver is not free, neither are his passengers[.]" *Id.* at 630.

{¶ 15} We find that *Richardson* is factually distinguishable and not controlling because the initial encounter between the officer and the individuals was a traffic stop, which is not a consensual encounter, and the officer did not allow the driver to return to the vehicle once the traffic stop was completed, but instead specifically directed him to wait behind the vehicle. Furthermore, we note that while the Sixth Circuit found that "words alone may be enough" for an encounter to constitute a seizure in *Richardson*, it subsequently recognized that "words alone may not be enough in every instance" in *United States v. Rodriguez*, 485 F.Appx. 16, 19 (6th Cir.2012). "The test is not whether police

expressly instruct a person not to leave, but whether the totality of the circumstances would convey to a reasonable person that she is not free to leave." *Id.* In *Rodriguez*, the Sixth Circuit identified several factors as evidence of a seizure, including the use of language, before examining whether they were present in the case. Thus, the import of *Richardson* and *Rodriguez* is that words must be examined in the context of the totality of the circumstances surrounding an encounter with a police officer to determine whether such encounter is consensual.

{¶ 16} *Wynne* involved two police officers in a paddy wagon who engaged in a conversation with Wynne. Upon inquiry, Wynne verbally provided his name, birthdate, and social security number. While Wynne continued to engage in general conversation with one officer, the other officer performed a warrant check. Upon inquiry, Wynne admitted to possessing drugs. Subsequently, he was found in possession of drugs and charged accordingly. The trial court denied his motion to suppress, finding that the interaction with police was a consensual encounter and that Wynne was not detained until after he voluntarily admitted to possessing drugs.

{¶ 17} The Tenth Appellate District upheld the denial of the motion to suppress, finding that

> the use of Wynne's identifying information, which he provided verbally to the officers, to conduct a warrant check did not constitute an implicit command to remain on the scene, and that a reasonable person in Wynne's position would not believe he was not free to leave or otherwise terminate the encounter. There was no evidence Wynne knew that Officer Bogard was conducting the warrant check. Officer Bogard did not testify he advised Wynne that he was checking for warrants or requested Wynne wait while the warrant check was underway. Instead, the warrant check was performed while Officer Beatty continued the conversation with Wynne.

*Wynne*, 2019-Ohio-1013 at ¶ 17. Upon determining that there were no other factors indicating seizure, the appellate court held, "we cannot conclude the officers' request for

identifying information and possible use of that information to perform a warrant check would have communicated to a reasonable person that he was not free to refuse the request or to terminate the encounter after giving the information." *Id.*

{¶ 18} *McDowell* involved another encounter between a police officer and a pedestrian. While patrolling for a burglar, the officer encountered McDowell in an alley during the early morning. The officer exited his cruiser, approached McDowell, and engaged in general conversation with him. Upon request, McDowell provided his identification card. The officer retained the identification card for about 30 seconds while he copied the information in a notepad and then returned the card to McDowell. Thereafter, the officer continued talking to McDowell and asked if he was carrying a weapon. After McDowell admitted possessing a firearm, the officer confiscated the weapon and arrested McDowell. The trial court denied McDowell's motion to suppress.

{¶ 19} The Tenth Appellate District upheld the denial of the motion to suppress, finding that the entire interaction between the officer and McDowell did not involve an overt show of force or authority and was a consensual encounter. *McDowell*, 2013-Ohio-5300 at ¶ 27. The appellate court observed that the officer "denied using the words 'before I let you go' or otherwise indicating to [McDowell] that he was not free to leave," and found that there were no other factors indicating a seizure. *Id.* at ¶ 23. The court further reasoned that because McDowell was on foot, the officer's brief retention of his identification card to copy down certain information did not have the same immobilizing effect as retaining the identification of a driver while running a warrant check. *Id.* at ¶ 29.

{¶ 20} In relying upon *Wynne* and *McDowell*, the trial court emphasized the Tenth Appellate District's observation that the police denied using the words "before I let you go" or otherwise indicating to McDowell that he was not free to leave, and did not request Wynne to wait while the warrant check was underway. In finding that Kirk was seized when

- 8 -

Sergeant Ruehrwein told him, "I'll be back with [you] in a minute," the trial court likened the statement to an officer asking a person "to wait a minute," or "to hang out right here for me, okay?" as in the *Richardson* case.

{¶ 21} As stated above, we consider whether, in light of all the circumstances surrounding an encounter between a police officer and a citizen, the officer's words and actions would have conveyed to a reasonable person that he was not free to leave. *Body*, 2012-Ohio-379 at ¶ 14. Based upon the totality of the circumstances surrounding Sergeant Ruehrwein's interaction with Kirk, we find that the interaction was a consensual encounter until the officer told Kirk he was going to pat him down. In other words, Sergeant Ruehrwein's statement to Kirk, "I'll be back with [you] in a minute," did not constitute a seizure of Kirk implicating the Fourth Amendment and requiring reasonable suspicion.

{¶ 22} Notwithstanding the fact that Sergeant Ruehrwein was in uniform and in a cruiser, as police officers commonly are in consensual encounter cases, the interaction between the officer and Kirk did not involve a show of force or authority until the officer advised Kirk he would pat him down. Sergeant Ruehrwein was the only officer at the scene. He did not activate the sirens or the light bar of his cruiser when he pulled up to Kirk and parked his cruiser ten feet from Kirk. There is no evidence the officer blocked Kirk's path with his cruiser. The officer never displayed his weapon, touched Kirk, or accused him of a crime. The officer merely requested identification from Kirk and inquired as to his purpose for being near the dumpsters and loading area of the store. The officer did not advise Kirk that he was returning to his police cruiser to use Kirk's identifying information to check for warrants, and did not advise Kirk to remain pending the completion of that process.

{¶ 23} While the officer told Kirk he would be back with him in a minute, such was not an overt command that Kirk remain at the scene while the officer completed a records check. Although the officer's statement implicitly conveyed his expectation or assumption

- 9 -

that Kirk would wait for him, it did not explicitly command that Kirk wait, unlike the statement at issue in *Richardson*. Kirk could have refused to provide his identifying information or otherwise walked or pedaled away from the encounter at any time before he was informed he would be pat down. Admittedly, while doing so might have created an awkward situation between Kirk and the officer, "awkwardness alone does not invoke the protections of the Fourth Amendment, particularly so when the test employed is an objective one." *United States v. Weaver*, 282 F.3d 302, 311-312 (4th Cir.2002).

{¶ 24} Under the circumstances leading up to Sergeant Ruehrwein's statement, without other factors indicating seizure, we cannot conclude that the officer's statement would have communicated to a reasonable person that he was not free to terminate the encounter and walk away after providing his identifying information. Sergeant Ruehrwein's statement was not enough of a show of force or authority to convert the encounter into a seizure. We therefore find that Kirk was not seized within the meaning of the Fourth Amendment when the officer told him he would be back with him in a minute. Because Sergeant Ruehrwein's statement did not convert the encounter from a consensual one to an investigative detention, the trial court erred in granting Kirk's motion to suppress.

{¶ 25} We decline to address the state's argument regarding whether the trial court's suppression of the methamphetamine was the proper remedy as it is rendered moot given this court's decision to reverse the trial court's grant of Kirk's motion to suppress. Furthermore, the state did not make this argument either in its memorandum in opposition to Kirk's motion to suppress or during the suppression hearing. It is well established that a party cannot raise new issues or legal theories for the first time on appeal because such issues or theories are deemed waived. *State v. Mehta*, 12th Dist. Butler Nos. CA2000-11-232 and CA2000-12-256, 2001 Ohio App. LEXIS 3896, *8 (Sept. 4, 2001); *State v. Walker*, 1st Dist. Hamilton No. C-150757, 2017-Ohio-9255, ¶ 26. This waiver "applies to arguments

not asserted either in a written motion to suppress or at the suppression hearing." *Walker* at ¶ 26; *Vaughn*, 2015-Ohio-828; *State v. Clay*, 8th Dist. Cuyahoga No. 91942, 2009-Ohio-2725.

{¶ 26} The state's assignment of error is sustained.

{¶ 27} Judgment reversed and remanded to the trial court for further proceedings according to law and consistent with this opinion.

S. POWELL, J., concurs.

PIPER, J., concurs in judgment only.


**PIPER, J., concurring in judgment only.**

{¶ 28} I agree with the majority that the trial court's decision suppressing the evidence to be used against Kirk should be reversed. However, my conclusion is based upon significantly different rationale and thus, I concur in judgment only. The trial court was correct to the extent of the analysis given, but the analysis needed to continue before reaching a conclusion.

{¶ 29} The trial court properly identified the three types of police-citizen encounters: those that are consensual, those that are *Terry* stops resulting in non-intrusive detentions, and those that are arrests based upon probable cause. *Brown v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254 (1975). While my colleagues find that the encounter between Kirk and the sergeant was wholly consensual, I must respectfully disagree because the trial court was correct in finding Kirk was not free to disregard the sergeant and leave the scene after the sergeant's comment.

{¶ 30} The majority correctly recites the law on consensual encounters. However, I disagree with its conclusion that a reasonable person in these circumstances would have

felt that he or she was free to leave the scene in the middle of the sergeant's investigation. The facts speak for themselves.

{¶ 31} Upon observing Kirk engaging in suspicious activity near a Dollar General store, it is evident the sergeant approached Kirk for the purpose of investigating. He did not approach Kirk because he saw a friend or someone he knew; he saw Kirk in an unusual place doing an unusual thing. Kirk gave the sergeant a suspicious explanation as to where and how he obtained the band saw. This was compounded by Kirk telling the sergeant he could not produce any form of identification. After verbally obtaining Kirk's information in what was a continuing, minor investigation, the sergeant expressly told Kirk, "I'll be back with you in a minute." Kirk was aware the sergeant was continuing his inquiry as part of the interaction between them and therefore waited by the bicycle to which he had been trying to tie the large saw.

{¶ 32} Instructing Kirk, "I'll be back with you in a minute," was tantamount to saying, "wait here, this will not take long." With the accumulated facts present, there is no rationale interpretation of "I'll be back with you in a minute" that means "ignore me, I'm done looking into this." No reasonable person in Kirk's situation would think the sergeant did not expect him or her to be there when he got back. The sergeant's words do not convey that he had accepted Kirk's implausible explanation.

{¶ 33} When a law enforcement officer is questioning a person in the course of an investigation, and is in the process of verifying information received, the phrase "I'll be back with you in a minute" means "we're not done talking." In order to continue talking, the other person must be there. While the state argues that police officers are free to ask questions, the sergeant was not asking a question, he was letting Kirk know: "we're not done." No reasonable person under these circumstances would believe he or she was free to

disregard the officer and walk away, or in this case, ride away, in the middle of the officer's investigation.

{¶ 34} The state advances an overly-broad version of consensual encounter beyond its reasonable application. The state suggests for one to be detained, they must be told they are being detained. In the alternative, the state suggests that an officer's statement cannot create a detention if it is subject to multiple interpretations. Believing the interaction between the two to be wholly consensual, the assistant prosecutor initially misperceived the significance of the sergeant's actions. This led the assistant prosecutor to incorrectly frame the issue as only a consensual encounter. Courts should not be asked to misapply legal concepts to correct an assistant prosecutor's myopic focus on the facts. Even so, once a trial court determines that an encounter was not consensual, as the trial court correctly did here, the remaining question was whether the detention was valid pursuant to applicable law. When the circumstances indicate a person's freedom of movement has been restrained, "the encounter loses its consensual nature and falls into one of the other two categories;" a detention pursuit to *Terry* or an arrest. *State v. Westover*, 10th Dist. Franklin No. 13AP-555, 2014-Ohio-1959, ¶ 15.

{¶ 35} A police officer who has a reasonable, articulable suspicion that an individual is currently engaged in, or is about to engage in, criminal activity may briefly stop and detain that individual in order to investigate the officer's reasonable suspicion that criminal activity could be afoot. *Terry v. Ohio*, 392 U.S. 1, 21-22, 27, 88 S.Ct. 1868 (1968). The level of suspicion required to meet this standard is less demanding than probable cause but more than "an inchoate and unparticularized suspicion or hunch." *State v. Hawkins*, Slip Opinion No. 2019-Ohio-4210, ¶ 20. The police officer must be able to cite specific, articulable facts, which, taken together with the rational inferences that can be drawn from those facts, reasonably warrant the intrusion. *State v. Andrews*, 57 Ohio St.3d 86, 87(1991).

{¶ 36} The propriety of an investigative detention by a police officer must be viewed in the totality of the surrounding circumstances as seen through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training. *State v. Bobo*, 37 Ohio St.3d 177, 179-180 (1988). Thus, the consideration of the relevant facts must be measured "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *State v. Hairston*, 156 Ohio St.3d 363, 2019-Ohio-1622, ¶ 10.

{¶ 37} Reasonable suspicion is not negated by the possibility of innocent conduct. "Behavior and circumstances that are noncriminal by nature may 'be unremarkable in one instance * * * while quite unusual in another.'" *Hawkins* at ¶ 23, quoting *United States v. Arvizu*, 534 U.S. 266, 276, 122 S.Ct. 744 (2002). In other words, merely because an officer may be aware there *could be* an innocent explanation for the officer's reasonable suspicion does not mean the officer is relieved of the duty to investigate.

{¶ 38} The circumstances of what occurred in the case sub judice demonstrate that the sergeant had reasonable suspicion that criminal activity could be afoot. Beginning with the initial conduct, and ending with the discovery that Kirk possessed drugs, the sergeant's actions were nothing less than what would be expected of a duty-bound, professional police officer. The sergeant knew that there was a loading area and a storage unit used by Dollar General to store products it could not fit into its stock room. The sergeant observed a person located near the storage unit attempting to attach a large object to a bicycle. Clearly, the person did not appear to be a store employee. Upon simple inquiry, Kirk offered a vague and implausible explanation, that he found the bandsaw on the side of the road close to a nearby residence. The circumstances certainly support a brief detention in order to further investigate.

{¶ 39} Receiving an explanation that made little sense, the sergeant requested identification, which Kirk could not produce. This only served to heighten reasonable suspicion to investigate. Detaining Kirk a brief time to investigate was entirely reasonable under the totality of the circumstances when viewed through the eyes of a reasonable and prudent police officer, especially one with 25 years of experience. Thus, the encounter between the sergeant and Kirk, while not consensual, was nonetheless a valid momentary, non-intrusive, detention that did not violate Kirk's Fourth Amendment rights.

{¶ 40} In reading the transcript of the hearing, as well as the state's written closing argument, it is understandable that the trial court focused on the issue of whether the encounter was consensual without going further to determine whether the detention was permissible under the law. The assistant prosecutor focused upon questions such as whether the sergeant ever expressly told Kirk he was under arrest or expressly told Kirk he was being detained. The state then cited case law specific to consensual encounters in its written closing arguments and suggested that the encounter was entirely consensual rather than suggesting that any detention that took place was permissible under the facts. Thus, the trial court focused on whether the encounter was consensual in its written decision.

{¶ 41} However, Kirk's written motion to suppress, as well as the testimony elicited at the hearing, implicate *Terry*. Each of the cases Kirk relied upon in his motion to prove that suppression of the evidence was necessary were cases applying *Terry* to a detention. Neither party could feign surprise had the court continued its analysis by applying *Terry* to the testimony and facts presented.[3] Kirk's motion to suppress expressly articulated that his Fourth Amendment rights were violated when the sergeant detained him because the

---

3. The majority in a footnote misplaces significance upon the state's representation at our oral argument that the state "waives" *Terry* as binding constitutional law applicable to the facts. Once Kirk's motion raised the application of *Terry*, the state can neither waive, nor forfeit, the trial court's ability to consider iron-clad Fourth Amendment law.

sergeant lacked reasonable articulable suspicion of criminal activity to do so. Kirk specifically anticipated the trial court's application of *Terry*, and the trial court was on notice to analyze whether the existing detention was permissible. Once Kirk raised the issue that suppression was required because a detention took place with no reasonable, articulable facts supporting the suspicion of criminal activity, the trial court was obligated to address the issue and the state could not negate Kirk's motion nor relieve the trial court from considering the law on the issue.

{¶ 42} Upon determining a detention had occurred the trial court had evidence before it to answer the further question as to whether Kirk's Fourth Amendment rights were violated requiring the evidence to be suppressed. The trial court addressed the first aspect of the question by determining that the encounter was not consensual. However, the trial court did not address the next part of the analysis; was the detention that resulted constitutionally permissible? As discussed above, the record demonstrated that the sergeant had reasonable articulable suspicion of criminal activity so that the detention to further investigate was reasonable. The encounter between Kirk and the sergeant, therefore, falls properly within the second category of citizen-police encounters – a valid *Terry* detention. Thus, Kirk's Fourth Amendment rights were not violated, and he was not entitled to suppression of the evidence the state intended to use.

{¶ 43} When a uniformed law enforcement officer has reasonable suspicion to investigate, I believe our precedent should not encourage the notion that the person being investigated is free to disregard the officer and walk away while the investigation is ongoing particularly when the officer has indicated the need for further engagement. Walking away from an investigating officer adds an element of heightened intensity creating danger for all involved. In these circumstances, Kirk was made to believe the sergeant was not finished

with his inquiry and that the sergeant expected him to remain on scene. Yet, there simply was no Fourth Amendment violation of Kirk's rights.

{¶ 44} While I agree with the majority that the trial court's decision must be reversed, I disagree with its rationale that Kirk's encounter with the sergeant was wholly consensual. Despite Kirk's motion suggesting the absence of reasonable, articulable suspicion of criminal activity, I find just the opposite and determine the detention was reasonable under *Terry*. Kirk's motion to suppress should have been denied for the reasons expressed above, therefore, I respectfully concur in judgment only.